UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NANCY BACHMAN,<br><br>              Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>              Defendant. | CASE NO.    C07-5511BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 20, 2009 |

Plaintiff, Nancy Bachman, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is 58 years old.[1] Tr. 27. She has a college education and past work experience as a school bus driver. Tr. 19, 74, 77.

On October 2, 2002, plaintiff filed an application for disability insurance benefits, alleging disability as of July 15, 2001, due to fibromyalgia or myofascial pain syndrome, chronic fatigue syndrome,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

depression, anxiety, and pain in the low back, right leg, right hip, and legs. Tr. 19, 60-62, 73. Her application was denied initially and on reconsideration. Tr. 19, 27-29, 33, 36. A hearing was held before an administrative law judge ("ALJ") on April 12, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 262-89.

On June 13, 2005, the ALJ issued a decision, determining plaintiff to be not disabled prior to February 24, 2005, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of degenerative disc disease, fibromyalgia, depression, and an anxiety disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform light work, with certain additional non-exertional limitations;

(5) at step four, plaintiff was unable to perform her past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy prior to February 24, 2005, but was disabled at this step beginning thereafter.

Tr. 19-26. Plaintiff's request for review was denied by the Appeals Council, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On September 24, 2007,[3] plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on July 8, 2008. (Dkt. #16).

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3] A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 (claimant may file action in federal court within 60 days after the date notice of the Appeals Council's action is received); 20 C.F.R. § 404.982 (any party to Appeals Council's decision or denial of review may request time for filing action in federal court be extended). This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). The record in this case fails to indicate when the Appeals Council issued its order denying plaintiff's request for review. Because defendant did not raise the statute of limitations as an affirmative defense in his responsive pleading (Dkt. #14), however, to the extent plaintiff may have filed his complaint with this Court late, that issue is waived, and the undersigned will deal with this matter on its merits.

Plaintiff argues the ALJ's decision concerning the period prior to February 24, 2005, should be reversed and remanded to the Commissioner for an award of benefits due to her being disabled as of July 15, 2001, for the following reasons:

    (a)    the ALJ erred in evaluating the medical evidence in the record;

    (b)    the ALJ erred in not finding plaintiff's right carpal tunnel syndrome to be severe;

    (c)    the ALJ erred in not finding that plaintiff's mental impairments met or equaled the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04;

    (d)    the ALJ erred in assessing plaintiff's residual functional capacity; and

    (e)    the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th

Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.  Dr. Schneider

John R. Schneider, Ph.D., completed a mental status report in early November 2002, in which he

stated he had been seeing plaintiff since early November 1999, at a frequency of one visit every week to one visit every eight weeks. Tr. 134. Dr. Schneider reported that plaintiff's physical problems significantly affected her mental health. Id. He further reported that he last saw plaintiff in late October 2002, and that his most recent objective findings revealed her to be "tangential and very forgetful" in expressing herself, to have difficulty in regard to focusing, concentrating and problem solving, and to have "significant memory impairment." Id.

Dr. Schneider went on to state that since he first began treating plaintiff, her level of functioning had "diminished significantly" and her depression had become "slightly worse." Tr. 135. However, he found "her lack of mental capacity" to be "most noticable." Id. Dr. Schneider diagnosed plaintiff with a long-term dysthymic disorder, with recurring major depressive episodes, and assessed her with a global assessment of functioning ("GAF") score of 55. Id. In terms of activities of daily living, Dr. Schneider found plaintiff to be capable of self-care with respect to food, hygiene and transportation. Id. In terms of social functioning, Dr. Schneider reported that while plaintiff had difficulty maintaining contact with friends and family, she was friendly and could be outgoing. Id.

Concerning concentration, persistence and pace, however, Dr. Schneider opined that plaintiff was unable to focus for more than ten to twenty minutes at a time, could not remember tasks and was not able to complete work tasks "at any satisfactory level." Tr. 136. Finally, Dr. Schneider provided the following opinion as to deterioration or decompensation in a work or work-like setting:

> This patient's Bus Driving job has been very stressful for her and she is unable to drive both physically and emotionally. She was able to handle young school children but the pain in her leg and later memory and focus problems made it impossible for her. The stress associated with her decreased functioning and supervisory pressure did cause her to withdraw and become more depressed.

Id.

Dr. Schneider provided another report in early April 2005, in which he noted that his most recent session with plaintiff was in late March 2005. Tr. 257. Although plaintiff described herself as independent and "would deny" she was "unable to sustain normal daily living activities," his observations confirmed the opposite. Id. Dr. Schneider described her as a "bright" woman, who has had increasing difficulties with short and long term memory, concentration, and keeping track of possessions, as "a result of long-term anxiety and depression, chronic pain and/or a side affect [sic] of her multiple medications." Tr. 257-

REPORT AND RECOMMENDATION
Page - 5

58. He stated that plaintiff's mental functioning had deteriorated, "but not in a broad, consistent fashion that would be consistent with neurological problems." Tr. 258. Dr. Schneider further stated that:

> The woman seen in 1999 could not have gotten a college degree, the woman seen last month has deteriorated significantly more. Without the improvement of her health, chronic pain, depression and anxiety, and mental functioning, she may have to live in a group home.

Id.

Dr. Schneider also provided the following psychological summary:

> Ms. Bachman has been chronically depressed for at least the last six years and has had several major depressive episodes during that period. She has a marked level of general anxiety that becomes critical at times. She has a long of [sic] port-traumatic [sic] stress syndrome and a social conflict pattern that is at times symptomatic of an anti-social personality. . . . Her symptoms include chronic fatigue, mood fluctuations, agitation, psychomotor retardation, general feelings of worthlessness and hopelessness, crying, suicidal thoughts and wishes without intent or a plan, delusions, loss of appetite and concentration problems. She scored in the severe range on both the Beck Depression . . . and Anxiety . . . Inventories. It is difficult [sic] the interactive effects of her chronic health problems, pain and medications with her psychological state.

Id. Dr. Schneider concluded his report by once more stating that since 1999, plaintiff's "level of general functioning" had "noticeably deteriorated," and that her "decreased mental skills" were "the most serious and most perplexing." Id.

Plaintiff asserts the ALJ erred by failing to give controlling weight to Dr. Schneider's findings and opinions. In regard to the medical evidence in the record concerning plaintiff's mental impairments and limitations, the ALJ found as follows:

> . . . While treating psychologist John R. Schneider, Ph.D., lists diminished mental capacity, memory problems, difficulty with problem solving, and a significantly diminished functional level in November 2002, a significantly higher functional level is shown in the objective evaluation by Cherly S. Brishetto, Ph.D., in February 2003 (Exhibits 2F and 6F). . . . While the claimant's treating physician, Bonnie G. Reagan, M.D., credits the allegations of the claimant's symptoms without objective findings, even this source notes that the claimant has always been difficult for her to diagnose, partly because her symptoms change over time, as well as due to the complex and confusing history and mental problems (Exhibit 7F).

Tr. 22. Plaintiff argues Dr. Schneider, as her treating psychologist was in a better position to observe and evaluate her condition than Dr. Brischetto, a consulting examining psychologist. Plaintiff further argues the findings of both Dr. Reagan and Dr. Brishetto support those of Dr. Schneider.

The undersigned agrees the ALJ failed to provide adequate reasons for rejecting the findings and opinions of Dr. Schneider. The primary reason the ALJ gave for doing so was, as set forth above, that Dr.

1  Brischetto's evaluation showed a significantly higher functional level three months later in February 2003.
2  But be that as it may (see Tr. 164-71), an examining psychologist's conflicting findings and opinion is not
3  alone sufficient to overcome those of a treating psychologist. That is, because the findings and opinion of
4  a treating physician in general is given more weight than those of an examining physician, an ALJ may not
5  reject the latter in favor of the former without some showing – supported by actual and substantial
6  evidence – that the former are more reliable, accurate or consistent with the record as a whole than the
7  latter.

The undersigned disagrees, however, that the findings and opinions of Drs. Brischetto and Reagan necessarily support those of Dr. Schneider as argued by plaintiff. For example, plaintiff notes in early May 2003, that Dr. Reagan stated she seemed "somewhat disorganized," and believed she did have "cognitive problems" which might be "somewhat elusive." Tr. 176. Plaintiff also points to a comment made by Dr. Reagan in late August 2003, that plaintiff jumped "from subject to subject," making it "very difficult to get a fully coherent background on any of her major problems." Tr. 174. While Dr. Reagan did diagnose her with "[c]ognitive problems" at the time, she did not specifically link that diagnosis to the difficulty she had getting a coherent medical history from plaintiff. Even if the two can be linked, though, none of the above statements made by Dr. Reagan rise to the level of deteriorating mental and cognitive functioning noted by Dr. Schneider in his reports.

Nor do any of the other progress notes and treatment records obtained from Dr. Reagan indicate the level of dysfunction found by Dr. Schneider. See Tr. 186, 191, 193, 196-99. In fact, Dr. Reagan noted in late January 2000, and then again in mid-February 2002, that medication "had made a big improvement in her life," that a psychologist was "helping her quite a bit," and that she "was doing quite well." Tr. 198-99. Continued improvement and stability also were reported in March, April and June 2000. Tr. 195-97. As for Dr. Brischetto, while she may have noted that plaintiff lost track of what she was saying at times, she also stated that plaintiff "seemed easily redirected." Tr. 168-69. In addition, although plaintiff may have rambled, displayed a restricted affect, and was depressed and irritable, Dr. Brischetto also noted that she appeared to be "logical, organized and goal-directed," gave "no clear indication of psychotic thought process," had no unusual thought content, and was alert, fully oriented, and able to sustain concentration and attention. Tr. 169; see also Tr. 170-71. As such, remand for further consideration of the findings and opinions of these three medical sources is warranted.

B. <u>Dr. Lee</u>

In early November, 2001, plaintiff underwent a physical evaluation conducted by Wai L. Lee, M.D., in regard to her complaints of diffuse musculoskeletal pain. Tr. 154. Dr. Wai's examination of plaintiff's joints revealed them to be "entirely within normal limits." Tr. 155. Plaintiff had full grip strength and full range of motion of his wrists, elbows and shoulders with no tenderness. Tr. 155-56. Plaintiff also had full range of motion in her hips, and while she did have tenderness there and in her back, her knees and ankles were unremarkable, and muscle strength was full throughout. Tr. 156. Dr. Wai, however, did find plaintiff had "mild tenderness to palpation over 11 of 18 trigger points" as well. <u>Id.</u>

In terms of diagnoses, Dr. Wai described plaintiff has having had an "8-9 year history of diffuse musculoskeletal aches with no evidence of significant joint involvement on examination." <u>Id.</u> He stated that her examination and history were "most consistent with a diagnosis of fibromyalgia," and that she might "have some mild component of osteoarthritis contributing to her low back pain and possibly her right hip." <u>Id.</u> In late December 2001, plaintiff was noted to have tenderness in her back, and Dr. Wai opined that she continued to have symptoms of myofascial pain syndrome. Tr. 152. Similar findings and the same diagnosis were made in early February 2002, and late September 2002. Tr. 148-49.

In late February 2005, Dr. Wai's physical examination of plaintiff was fairly unremarkable, except for some mild crepitation in her knees, tenderness in her feet, and "tenderness at 16 out of 18 tender points for fibromyalgia." Tr. 255. Dr. Wai diagnosed her with fibromyalgia syndrome, stating further in relevant part that:

> . . . [S]he has ongoing complaints of generalized pain. She has findings of pain on palpation of greater than 11 out of 18 of fibromyalgia tender points. She has ongoing symptoms of fatigue, insomnia, difficulty with concentration, and apparently was also told by her psychologist that her depression was worsening of late.

<u>Id.</u> Plaintiff argues the ALJ erred in failing to find she had a firm diagnosis of fibromyalgia based in part on the findings and diagnoses of Dr. Wai. As noted above, however, the ALJ acknowledged that she did have fibromyalgia, and that it constituted a severe impairment. Accordingly, plaintiff's assertion that the ALJ erred in failing to find it to be a firm diagnosis is without merit.

Plaintiff also points to nothing in Dr. Wai's treatment and evaluation notes to support her argument that she has been restricted from standing for more than 20 minutes because of aching and pain in her legs, and thus has been limited to performing only sedentary work, since her alleged onset date of disability.

REPORT AND RECOMMENDATION
Page - 8

1 Indeed, nowhere in those notes does Dr. Wai give an opinion as to any restrictions or limitations he felt she
2 might have resulting from her diagnosis of fibromyalgia or other noted physical impairments. As such, the
3 undersigned finds no error on the part of the ALJ here.

    C.    <u>Dr. Reagan</u>

Plaintiff also argues the ALJ should have restricted plaintiff to sedentary work based in part on the findings of Dr. Reagan concerning the presence of fibromyalgia. Again, the undersigned disagrees. In late April 2000, Dr. Reagan diagnosed plaintiff with "[b]ack pain/neck pain with headaches," noting, however, that she appeared to be well. Tr. 196. In late May 2001, Dr. Reagan diagnosed plaintiff with "[p]ossible fibromyalgia," although her physical examination was "essentially normal." Tr. 191. The same diagnosis was made in mid-October 2001, even though no physical examination was performed at the time. Tr. 186. In late November 2001, Dr. Reagan gave plaintiff the diagnosis of fibromyalgia "per Dr. Lee" (Tr. 185), and in mid-December 2001, diagnosed her with myofascial pain versus fibromyalgia (Tr. 185). This same type of diagnosis – i.e., myofascial pain syndrome and/or fibromyalgia – was provided by Dr. Regean on several other occasions as well. <u>See</u> Tr. 174-75, 178, 180-81.

Unlike Dr. Wai, Dr. Reagan did find plaintiff had a physical limitation as a result of her myofascial pain syndrome and/or fibromyalgia, but this merely was a restriction to not driving a school bus secondary to pain. Tr. 182. Dr. Regean did not opine as to any other specific work-related limitations, and certainly she never expressly restricted plaintiff to sedentary work or to standing for no more than 20 minutes. It is true that Dr. Reagan stated in late August 2003, that she "would try to support" plaintiff "for being disabled for an MVA." Tr. 174. However, it is not at all clear on what basis she made this statement, nor, as just discussed, did Dr. Reagan find, other than the restriction regarding bus driving, any specific work-related limitations that would justify a finding of disability. Indeed, plaintiff does not argue here that she should be found disabled based on Dr. Reagan's opine, but only that she should be limited to performing sedentary work. As such, the undersigned finds the ALJ also did not err here.

II.    <u>The ALJ Properly Did Not Find Plaintiff's Carpal Tunnel Syndrome to Be Severe</u>

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." <u>Id.</u> An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social Security

1 Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes
2 necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

3 An impairment is not severe only if the evidence establishes a slight abnormality that has "no more
4 than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v.
5 Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff
6 has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work
7 activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,
8 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device
9 used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

10 As noted above, the ALJ found plaintiff had severe impairments consisting of degenerative disc
11 disease, fibromyalgia, depression, and an anxiety disorder. Tr. 21.  Plaintiff argues, however, that the
12 substantial evidence in the record also supports a finding that her right carpal tunnel syndrome is a severe
13 impairment, and that the ALJ erred in not so finding.  The undersigned disagrees.  Plaintiff points to a
14 notation in the record by one medical source that she previously had been diagnosed with carpal tunnel
15 syndrome, and that she had complaints of pain in her right arm. Tr. 146.  Plaintiff also points to her own
16 testimony of right hand cramping, and to notations by Dr. Reagan that she had decreased sensation in the
17 thumb and small finger of her right hand (Tr. 174), and by a third medical source, who commented in late
18 March 2001, on plaintiff's hand complaints (Tr. 194).

19 None of these medical sources, though, have actually diagnosed plaintiff with right carpal tunnel
20 syndrome.  While the first medical source did note a past surgical history of right carpal tunnel release, this
21 occurred in 1977. Tr. 146.  In addition, that medical source, although noting some nerve involvement with
22 the right elbow, did not give plaintiff a current diagnosis of right carpal tunnel syndrome. Id.  Plaintiff,
23 furthermore, showed good range of motion in her right elbow, with x-rays revealing no indication of bony
24 abnormalities. Id.  Even if it can be said that some possible signs of carpal tunnel syndrome had been noted
25 here, again no actual diagnosis of carpal tunnel syndrome was provided at the time.  As for the findings of
26 decreased sensation made by Dr. Reagan, she too failed to diagnose plaintiff with carpal tunnel syndrome
27 or find any work-related limitations as a result thereof. Tr. 174.

28 The third medical source did give a diagnosis of "wrist pain consistent with tendonitis, resolving,"

REPORT AND RECOMMENDATION
Page - 10

1 along with "[o]ther symptoms" suggestive of a mild ulnar neuropathy. Tr. 194. But this diagnosis was for
2 the left wrist. Id. Even in terms of that left wrist, however, it was found to have a normal appearance and
3 normal range of motion, with no swelling, erythema or crepitus. Id. The ALJ thus properly did not find
4 plaintiff had a severe impairment consisting of right carpal tunnel syndrome. Accordingly, the ALJ also
5 did not err in failing to include in his decision a finding that she was limited to using her right hand on no
6 more than an occasional basis.

III. The ALJ's Step Three Analysis

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098. However, "[a] generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined

REPORT AND RECOMMENDATION
Page - 11

effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

In this case, the ALJ found that none of plaintiff's impairments met or equaled the criteria of any of those set forth in the Listings. Tr. 21. Of specific relevance here, the ALJ found as follows:

> . . . While the claimant alleges significant limitations due to psychological factors, and endorses severe symptoms, her level of functioning is inconsistent with the level of depression reported, in testing she exhibited adequate thinking, adequate memory, no difficulty with simple commands, the ability to complete forms independently, and an ability to persist through testing (Exhibits 2F, 6F, and 14F). While a treating source stated in November 2002, that she was unable to focus for more than 10 to 20 minutes at a time, in the February 2003, consultative evaluation, her ability was significantly greater. Consideration of all factors supports the conclusion that the impairments of depression and anxiety result in a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; there is no history of repeated episodes of decompensation; and no evidence of "C" criteria limitations.

Id. Plaintiff argues the conclusions of the medical sources discussed above in Section I supports a finding that her mental impairments meet or equal the criteria set forth in Listing 12.04. Once more, however, the undersigned disagrees.

Listing 12.04 reads in relevant part:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. While it does appear, and defendant admits, that plaintiff's mental impairments meet the criteria of Listing 12.04A, it is unclear whether the medical evidence in the record supports her argument that they satisfy those of Listing 12.04B. (Dkt. #20, p. 6).

First, as discussed above, the findings and opinions of Dr. Reagan and Dr. Brischetto do not arise to the level of mental functional limitations found by Dr. Schneider. Indeed, none of the findings or opinions of those two medical sources at all indicate plaintiff has demonstrated a marked limitation in plaintiff's activities of daily living or ability to maintain social functioning or concentration, persistence or pace, nor do they show the presence of repeated episodes of decompensation. As for Dr. Schneider, he did opine in early November 2002, that plaintiff could not "complete work tasks at any satisfactory level," which would tend to indicate at least a marked limitation in the area of maintaining concentration, persistence or pace (Tr. 136), and that his observations of her in early April 2005, indicated to him that she was "unable to sustain normal daily living activities" (Tr. 257), which arguably would tend to indicate at least a marked limitation in the area of activities of daily living as well.

As discussed above, however, while the ALJ did err in evaluating the findings and opinions of Dr. Schneider, it is not at all clear that the other objective medical evidence in the record, including that from Drs. Reagan and Brischetto, supports such severe limitations. Therefore, although it may be that plaintiff eventually should be found disabled at step three of the sequential disability evaluation process based on the findings and opinions of Dr. Schneider, the record does not clearly support such a finding at this time. Accordingly, while the undersigned does find the ALJ erred in determining plaintiff's mental impairments did not meet or equal any of the criteria of those set forth in the Listings, remand for further administrative proceedings to reconsider this issue is appropriate here.

IV.  The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> . . . [T]he claimant retains the residual functional capacity for light exertional level physical activities. She is able to sit a maximum of 2 hours at a time, with no overall limits on sitting, standing, or walking. The claimant is limited to occasional interaction with coworkers and the public, and requires simple routine repetitive work.

Tr. 22. As discussed above, plaintiff argues the ALJ should have limited her to sedentary work based on the findings and opinions of Drs. Reagan and Wai. Also as discussed above, however, the ALJ did not err in declining to do so. Nor for the reasons discussed above as well, was the ALJ required to include any limitations resulting from plaintiff's alleged right carpal tunnel syndrome in his assessment of her residual functional capacity. On the other hand, the ALJ did err in evaluating the findings and opinions of Dr. Schneider concerning plaintiff's mental functional limitations. As such, it is unclear whether the RFC with which the ALJ assessed plaintiff accurately reflects all of her work-related mental functional limitations. Accordingly, remand for reconsideration thereof is proper in this case.

V.     The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the

1  medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).
2  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported
3  by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from
4  that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th
5  Cir. 2001).

6  At the hearing, the ALJ posed a hypothetical question to the vocational expert, which contained
7  substantially the same limitations as were included in plaintiff's residual functional capacity assessment.
8  Tr. 282-83. In response to the hypothetical question, the vocational expert testified that there were other
9  jobs plaintiff could perform. Tr. 283-84. Based on the vocational expert's testimony, the ALJ found
10 plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.
11 Tr. 24. Plaintiff argues the ALJ erred in so finding.

12 Specifically plaintiff asserts that when limited to no more than sedentary work, with additional
13 restrictions of no more than occasional use of her hands, she is disabled at step five. As discussed above,
14 however, the ALJ did not err in failing to limit plaintiff to sedentary work or in finding her to be restricted
15 from no more than occasional use of her hands. As such, the ALJ also did not err in failing to find her
16 disabled at step five of the sequential disability evaluation process on these bases. On the other hand, also
17 as discussed above, the ALJ did err in evaluating Dr. Schneider's findings and opinions, and, for that
18 reason, it is unclear whether substantial evidence supports his assessment of plaintiff's RFC. Accordingly,
19 it also is unclear whether the ALJ's step five findings are supported as well. Thus, the Commissioner on
20 remand should reconsider plaintiff's ability to perform other jobs at that step.

21 VI.  **This Matter Should Be Remanded for Further Administrative Proceedings**

22 The Court may remand this case "either for additional evidence and findings or to award benefits."
23 Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course,
24 except in rare circumstances, is to remand to the agency for additional investigation or explanation."
25 Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in
26 which it is clear from the record that the claimant is unable to perform gainful employment in the national
27 economy," that "remand for an immediate award of benefits is appropriate." Id.

28 Benefits may be awarded where "the record has been fully developed" and "further administrative

proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical evidence in the record regarding plaintiff's mental functional limitations, the criteria contained in Listing 12.04 and whether plaintiff's mental impairments meet the "B" criteria thereof, plaintiff's residual functional capacity, and plaintiff's ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 20, 2009**, as noted in the caption.

DATED this 23rd day of February, 2009.

Karen L. Strombom
United States Magistrate Judge